# 22-3091

*To Be Argued By*:
JARROD L. SCHAEFFER

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

## Docket No. 22-3091

◄►

UNITED STATES OF AMERICA,

—v.—                    *Plaintiff-Appellant*,

BRIAN BENJAMIN,

*Defendant-Appellee*,

GERALD MIGDOL, also known as Sealed Defendant 1,
also known as Gerald Migol,

*Defendant*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

# REPLY BRIEF FOR THE UNITED STATES OF AMERICA

DAMIAN WILLIAMS,
*United States Attorney for the
Southern District of New York,
Attorney for the United States
of America.*
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2200

JARROD L. SCHAEFFER,
HAGAN SCOTTEN,
  *Assistant United States Attorneys,
      Of Counsel.*

# TABLE OF CONTENTS

PAGE

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . .  1

ARGUMENT— The District Court Erred in Dismissing
the Bribery Counts . . . . . . . . . . . . . . . . . . . . . . .  2

A.  *McCormick* Does Not Require an Express
*Quid Pro Quo* . . . . . . . . . . . . . . . . . . . . . . . .  2

B.  *Evans* Confirms the District Court's
Error . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

C.  This Court's Cases Do Not Support the
District Court's Construction of
*McCormick* . . . . . . . . . . . . . . . . . . . . . . . . .  14

D.  The Bribery Counts Are Sufficiently
Pled . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

1.  Explicitness Is Not an Element Required
to Be Alleged in an Indictment . . . . . .  21

2.  The Bribery Counts Sufficiently Allege
Crimes. . . . . . . . . . . . . . . . . . . . . . . . .  26

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

# TABLE OF AUTHORITIES

*Cases*:

*Citizens United v. Fed. Election Comm'n*,
558 U.S. 310 (2010) . . . . . . . . . . . . . . . . . . . . . . . 6

*Evans v. United States*,
504 U.S. 255 (1992) . . . . . . . . . . . . . . . . . . *passim*

PAGE

*Fed. Election Comm'n v. Cruz,*
142 S. Ct. 1638 (2022). . . . . . . . . . . . . . . . . . . . . . . 6

*Jimenez v. Walker,*
458 F.3d 130 (2d Cir. 2006) . . . . . . . . . . . . . . . 18

*McCormick v. United States,*
500 U.S. 257 (1991). . . . . . . . . . . . . . . . . . . *passim*

*McCutcheon v. Fed. Election Comm'n,*
572 U.S. 185 (2014). . . . . . . . . . . . . . . . . . . . . . . 6

*McDonnell v. United States,*
579 U.S. 550 (2016). . . . . . . . . . . . . . . . . . . . . . . 6

*Neder v. United States,*
527 U.S. 1 (1999). . . . . . . . . . . . . . . . . . . . . . . . . 5

*Patsy's Italian Rest., Inc. v. Banas,*
508 F. Supp. 2d 194 (E.D.N.Y. 2007). . . . . . . . . 19

*Hormel Foods Corp. v Jim Henson Productions, Inc.,*
73 F.3d 497 (2d Cir. 1996) . . . . . . . . . . . . . . . . 18

*United States v. Aleynikov,*
676 F.3d 71 (2d Cir. 2012) . . . . . . . . . . . . . . 27, 28

*United States v. Alfonso,*
143 F.3d 772, (2d Cir. 1998). . . . . . . . . . . . . . 25, 27

*United States v. Allinson,*
27 F.4th 913 (3d Cir. 2022) . . . . . . . . . . . .   3, 8, 11

*United States v. Balde,*
943 F.3d 73 (2d Cir. 2019) . . . . . . . . . . . . . . . . 21

*United States v. Blandford,*
33 F.3d 685 (6th Cir. 1994) . . . . . . . . . . . . . . . . 8

PAGE

*United States v. Blagojevich,*
794 F.3d 729 (7th Cir. 2015) . . . . . . . . . . . . . . . . 9

*United States v. Bout,*
731 F.3d 233 (2d Cir. 2013) . . . . . . . . . . . . . . . . 21

*United States v. Brennan,*
183 F.3d 139 (2d Cir. 1999) . . . . . . . . . . . . . . . . 7

*United States v. Carpenter,*
961 F.2d 824 (9th Cir. 1992) . . . . . . . . . . . . 3, 7, 8

*United States v. Correia,*
55 F.4th 12 (1st Cir. 2022) . . . . . . . . . . . . 7, 8, 19

*United States v. Davis,*
30 F.3d 108 (11th Cir. 1994) . . . . . . . . . . . . . . . 22

*United States v. Davis,*
841 F. App'x 375 (3d Cir. 2021) . . . . . . . . . . . . . . 9

*United States v. Dawkins,*
999 F.3d 767 (2d Cir. 2021) . . . . . . . . . . . . . . . . 4

*United States v. Donagher,*
520 F. Supp. 3d 1034 (N.D. Ill. 2021) . . . . . . . . 22

*United States v. Dozier,*
672 F.2d 531 (5th Cir. 1982) . . . . . . . . . . . . . . 5, 8

*United States v. Ford,*
435 F.3d 204 (2d Cir. 2006) . . . . . . . . . . . . . . . 24

*United States v. Friedman,*
854 F.2d 535 (2d Cir. 1988) . . . . . . . . . . . . . 11, 12

*United States v. Ganim,*
510 F.3d 134 (2d Cir. 2007) . . . . . . . . . . . . . 14, 19

PAGE

*United States v. Garcia,*
    992 F.2d 409 (2d Cir. 1993) . . . . . . . . . . 14, 17, 19

*United States v. Goldberg,*
    756 F.2d 949 (2d Cir. 1985) . . . . . . . . . . . . . . . . 25

*United States v. Inzunza,*
    638 F.3d 1006 (9th Cir. 2011) . . . . . . . . . . . . . 8, 20

*United States v. MacPherson,*
    424 F.3d 183 (2d Cir. 2005) . . . . . . . . . . . . . . . . 12

*United States v. McGregor,*
    879 F. Supp. 2d 1308 (M.D. Ala. 2012) . . . . . . . . 22

*United States v. Ng Lap Seng,*
    934 F.3d 110 (2d Cir. 2019) . . . . . . . . . . 22, 23, 25

*United States v. Oshatz,*
    912 F.2d 534 (2d Cir. 1990) . . . . . . . . . . . . . . . . 19

*United States v. Pirro,*
    212 F.3d 86 (2d Cir. 2000) . . . . . . . . . . . . . . . 27, 28

*United States v. Rooney,*
    37 F.3d 847 (2d Cir. 1994) . . . . . . . . . . . . . . . . . 27

*United States v. Sampson,*
    898 F.3d 270 (2d Cir. 2018) . . . . . . . . . . . . . 25, 27

*United States v. Santeramo,*
    45 F.3d 622 (2d Cir. 1995) . . . . . . . . . . . . . . . . . 23

*United States v. Siegelman,*
    640 F.3d 1159 (11th Cir. 2011) . . . . . . . . . . . . . 3, 8

*United States v. Stringer,*
    730 F.3d 120 (2d Cir. 2013) . . . . . . . . . . . . . . . . 29

PAGE

*United States v. Terry,*
    707 F.3d 607 (6th Cir. 2013) . . . . . . . . . . . 8, 9, 21

*United States v. Tomblin,*
    46 F.3d 1369 (5th Cir. 1995) . . . . . . . . . . . . . . 3, 9

*United States v. Turcotte,*
    515 F.2d 145 (2d Cir. 1975) . . . . . . . . . . . . . . . . 12

# United States Court of Appeals

## FOR THE SECOND CIRCUIT
## Docket No. 22-3091

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

—v.—

BRIAN BENJAMIN,

*Defendant-Appellee.*

GERALD MIGDOL, also known as Sealed Defendant 1, also known as Gerald Migol,

*Defendant.*

---

## REPLY BRIEF
## FOR THE UNITED STATES OF AMERICA

---

### Preliminary Statement

The Government respectfully submits this reply to the brief filed by defendant-appellee Brian Benjamin, and in further support of its appeal from the District Court's December 5, 2022 order dismissing three counts of the Indictment against Benjamin.

## A R G U M E N T

### The District Court Erred in Dismissing the Bribery Counts

The District Court dismissed three counts alleging that Benjamin, then a state senator, solicited and received bribes by agreeing to allocate $50,000 in state funds to a non-profit organization in exchange for campaign contributions, holding that this did not sufficiently allege an explicit *quid pro quo* under *McCormick v. United States*, 500 U.S. 257 (1991). But the Supreme Court has held that demanding or accepting money in exchange for official action "satisfies the *quid pro quo* requirement of *McCormick*." *Evans v. United States*, 504 U.S. 255, 268 (1992). In his brief, Benjamin fails to acknowledge, much less address, this dispositive holding. Instead, Benjamin claims there can be no explicit *quid pro quo* unless the evidence of that agreement is express. That is not what *McCormick* held. As other courts have consistently recognized, it is the specific things to be exchanged that must be explicit. The evidence offered to prove that agreement, like evidence in every other area of criminal law, can be direct or circumstantial, as every Circuit to consider this question has held.

### A. *McCormick* Does Not Require an Express *Quid Pro Quo*

In its opening brief, the Government explained that courts have consistently understood the explicit *quid pro quo* required by *McCormick* to mean that an agreed-upon exchange must be clear and unambiguous in its terms, not that the agreement was reached using

express words. (Br. 15-22).[1] In response, Benjamin claims that the Government "reads the word 'explicit' out of" *McCormick*. (Benjamin Br. 21-22). This dodge is disingenuous at best: the central question on appeal is what "explicit" means in *McCormick*, which is why the word appears 77 times in the Government's opening brief. More importantly, the meaning of "explicit" is the focus of the Circuit decisions uniformly rejecting Benjamin's interpretation. *See, e.g.*, *United States v. Allinson*, 27 F.4th 913, 925 (3d Cir.) ("The explicitness requirement does not require an official's specific statement that he will exchange official action for a contribution, but rather requires that the quid pro quo be clear and unambiguous, leaving no uncertainty about the terms of the bargain."), *cert. denied*, 143 S. Ct. 427 (2022); *United States v. Siegelman*, 640 F.3d 1159, 1171 (11th Cir. 2011) ("Since the [bribery] agreement is for some specific action or inaction, the agreement must be *explicit,* but there is no requirement that it be *express.*"), *cert. denied,* 566 U.S. 1043 (2012); *United States v. Tomblin*, 46 F.3d 1369, 1381 (5th Cir. 1995) ("The explicitness requirement is satisfied so long as the terms of the quid pro quo are clear and unambiguous."); *United States v. Carpenter*, 961 F.2d

---

[1] "Br." refers to the Government's main brief on appeal. "A." refers to the appendix filed with that brief. "Benjamin Br." refers to Benjamin's brief on appeal. "Dkt." refers to an entry on the District Court's docket for this case. Unless otherwise noted, case text quotations omit all internal alterations, quotation marks, and citations.

824, 827 (9th Cir.) ("This understanding need not be verbally explicit. . . . As we read *McCormick,* the explicitness requirement is satisfied so long as the terms of the *quid pro quo* are clear and unambiguous."), *cert. denied,* 506 U.S. 919 (1992).

Benjamin also attempts to convert *McCormick* into a case about sufficiency of the evidence, and then prevail by arguing that the evidence in *McCormick* was stronger than the evidence here. (Benjamin Br. 22-23). But this tactic cannot help him for at least two independent reasons.

*First*, even if *McCormick* were an opinion about sufficiency of the evidence, this appeal plainly is not. Benjamin does not, and could not reasonably, dispute that "'[a]t the indictment stage, we do not evaluate the adequacy of the facts to satisfy the elements of the charged offense. That is something we do after trial.'" (Br. 50 (quoting *United States v. Dawkins*, 999 F.3d 767, 780 (2d Cir. 2021))). The Government does not agree that the evidence against Benjamin is weaker than the evidence in *McCormick*, but this Court cannot now judge that, because there has not been a trial and no evidence has been received. Therefore, even if *McCormick* were a sufficiency case, the correct resolution of this appeal would be to remand for trial on the bribery counts, so that the evidence against Benjamin could be heard and compared to the evidence in *McCormick*.

*Second*, *McCormick* concerned jury instructions, not sufficiency of the evidence. (Br. 33-34). To assert otherwise, Benjamin relies on a footnote in which the *McCormick* majority stated it was "far from clear" that

the Government had met its burden. *McCormick*, 500 U.S. at 267 n.5. But that footnote actually shows the opposite. It responded to the dissent's view that proof of a *quid pro quo* was overwhelming, and thus any defect in the instructions harmless. *Id.*; *id.* at 281 (Stevens, J., dissenting)). That is why the majority said only that it was "far from clear" that the evidence was sufficient: Although such an indefinite description is not enough to reverse a conviction for insufficiency, it responded to the dissent's view that the instructional error was harmless. *See generally Neder v. United States*, 527 U.S. 1 (1999).[2]

Benjamin's primary attempt to address *McCormick* does not interpret *McCormick* at all, but instead relies

---

[2]   This footnote also refutes another of Benjamin's arguments. As noted in the Government's main brief, *McCormick* endorsed the Fifth Circuit's decision in *United States v. Dozier*, 672 F.2d 531 (5th Cir. 1982), as correctly stating the *quid pro quo* requirement in campaign contribution cases, and *Dozier* affirmed convictions that did not involve an express agreement. (Br. 19). Benjamin minimizes *Dozier*'s import, claiming that *McCormick* contains "no discussion of the facts or issues presented in that case." (Benjamin Br. 23). But in the same footnote Benjamin cites, *McCormick* recognized *Dozier* as among those cases that already required the correct *quid pro quo*. *McCormick*, 500 U.S. at 267 n.5. And *McCormick* elsewhere cited *Dozier* as an example of a case consistent with the need to "define[ ] the forbidden zone of conduct with sufficient clarity." *McCormick*, 500 U.S. at 273.

on other cases concerning different statutes—many civil—exploring First Amendment protections for campaign contributions. (Benjamin Br. 16-21). Suggesting this circuitous route to understanding *McCormick* is odd: both parties agree that *McCormick* was driven by First Amendment concerns, and that faithful application of *McCormick* suffices to protect those concerns. (Br. 40; Benjamin Br. 18). It is thus unclear why Benjamin does not first resort to cases applying *McCormick*, other than because they all come out against him.

In any event, the disparate cases Benjamin cites do not help him, because they make clear that the First Amendment in no way protects a *quid pro quo* involving campaign contributions. *See Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1652-54 (2022) (the Government may prevent "*quid pro quo* corruption" in campaign contributions, but "may not seek to limit the appearance of mere influence or access"); *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 192 (2014) ("Any regulation must . . . target what we have called '*quid pro quo*' corruption or its appearance."); *McDonnell v. United States*, 579 U.S. 550, 572-73 (2016) ("It is up to the jury, under the facts of the case, to determine whether the public official agreed to perform an 'official act' at the time of the alleged *quid pro quo*."). Indeed, even in its staunchest protection of campaign contributions under the First Amendment, the Supreme Court approved the use of "bribery laws if a *quid pro quo* arrangement were proved." *Citizens*

*United v. Fed. Election Comm'n*, 558 U.S. 310, 360 (2010).[3]

When Benjamin finally turns to cases interpreting *McCormick*, he fares no better. Confronted with a uniform line of cases rejecting the District Court's interpretation, he does not claim to identify even one that embraces his understanding of "explicit." (*Compare* Br. 16-17 *with* Benjamin Br. 38-43). Instead, he states that the First and Ninth Circuits do not apply *Evans* in cases involving campaign contributions. (Benjamin Br. 38). But that hardly helps him, because both those Circuits nonetheless accept the Government's interpretation of *McCormick. See Carpenter*, 961 F.2d at 827; *United States v. Correia*, 55 F.4th 12, 24-25, 30-31 (1st Cir. 2022) (rejecting sufficiency-of-the-evidence challenge to campaign contributions bribery conviction based on *quid pro quo* formed without express statement and proven by inferences). His argument only proves the Government's point that however you

---

[3] Benjamin's defense of his other constitutional argument merits little reply. He continues to argue that he lacked "fair warning" that his conduct was criminal, despite the litany of affirmed prosecutions on the theory at issue here. (Benjamin Br. 36-37). The only new case he cites thus further defeats his argument. *See United States v. Brennan*, 183 F.3d 139, 150 (2d Cir. 1999) (noting due process concerns where Government identified "no precedent for criminal liability" on the theory at issue).

read *Evans*, the District Court misread *McCormick*. (Br. 20-22).

Benjamin also notes that campaign contributions were not at issue in *United States v. Blandford*, 33 F.3d 685 (6th Cir. 1994). (Benjamin Br. 38). That is true, which is why the Government did not include *Blandford* in the long list of cases applying the Government's understanding of *McCormick*. (*See* Br. 17-18). But it is quite clear that the Sixth Circuit takes the Government's view of *McCormick*—it rejected Benjamin's arguments, almost point-by-point, in *United States v. Terry*, 707 F.3d 607, 612-14 (6th Cir. 2013). There is thus no reason this Court should not also consult *Blandford*'s analysis of *McCormick* as persuasive authority. *See* 33 F.3d at 694-96.

Benjamin further errs in trying to distinguish cases rejecting his position as involving bribes consisting partly of campaign contributions and partly of other benefits. (Benjamin Br. 39-40). To start, although some of those cases concerned mixed bribes, just as many concerned bribes consisting solely of contributions. *See Allinson*, 27 F.4th at 918-19; *Siegelman*, 640 F.3d at 1166; *Carpenter*, 961 F.2d at 825; *United States v. Inzunza*, 638 F.3d 1006, 1013 (9th Cir. 2011); *Dozier*, 672 F.2d at 536-38. More importantly, none of the cases involving more than one type of bribe suggest that fact had anything to do with their holding. With good reason: in each of the cases Benjamin cites, the jury could have convicted based solely on the campaign contributions, and so the courts had to analyze whether those contributions alone could sustain the verdict. *See Correia*, 55 F.4th at 30-31 (finding an

"explicit quid pro quo" under *McCormick* with respect to the "branch" of the defendant's argument concerning campaign contributions); *United States v. Davis*, 841 F. App'x 375, 378 n.4 (3d Cir. 2021) ("The jury also heard evidence about non-campaign payments, but Davis only challenges the finding that the campaign contributions constituted illegal quid pro quos."); *United States v. Blagojevich*, 794 F.3d 729, 733 (7th Cir. 2015) ("[F]ederal law forbids any payment (or agreement to pay), including a campaign contribution, in exchange for the performance of an official act."); *Terry*, 707 F.3d at 713 ("That a bribe doubles as a campaign contribution does not by itself insulate it from scrutiny."); *Tomblin*, 46 F.3d at 1379 ("The question is whether the jury instruction given by the district court 'substantially covered' the distinction between the intent to make a legitimate campaign contribution and the intent to bribe.").[4]

Benjamin's inability to distinguish any of the cases embracing the Government's understanding of *McCormick* also further refutes his invocation of general First Amendment principles. Benjamin describes the Government's understanding of *McCormick* as "dangerous," a threat to "core democratic and First

---

[4] The remainder of Benjamin's analysis on this question is an apples-to-oranges comparison of evidence introduced at trials in other cases with the language of the Indictment here. (Benjamin Br. 40-43). But that only brings him back to the same flaw in his argument: If he wants to attack the sufficiency of the evidence, there must first be a trial.

Amendment principles." (Benjamin Br. 4, 18).[5] Absent is any analysis or evidence suggesting that the democratic process is less vibrant in the 29 states covered by the seven Circuits that embrace the Government's interpretation of *McCormick*—which remains the only interpretation accepted by any Circuit.

## B. *Evans* Confirms the District Court's Error

Benjamin spends a great deal of his brief asking this Court to ignore *Evans*. (Benjamin Br. 28-43). He has little choice. *Evans* states that providing specific official acts "in exchange for" campaign contributions "satisfies the *quid pro quo* requirement of *McCormick*." *Evans*, 504 U.S. at 268. Because that is what the Indictment alleges, if this Court follows *Evans* then Benjamin loses. But before addressing his arguments that a case explaining what satisfies *McCormick* somehow cannot aid in interpreting *McCormick*, another point bears repeating. Benjamin also loses without considering *Evans*. As explained in the Government's opening brief and above, Circuits that do not apply *Evans* in cases concerning campaign contributions still reject the District Court's belief that

---

[5]     Benjamin's amicus goes even further, conjuring a parade of horribles that will ensue from "chang[ing] the existing rules" concerning campaign contributions (Amicus Br. 5-21), without identifying a single court that has embraced these "existing rules"—much less acknowledging that courts presiding over most of the country have rejected those "rules" over the last three decades.

*McCormick* requires an express *quid pro quo.* (*Supra* at 7).

That is because *Evans* simply applies *McCormick* and universally accepted principles of criminal law that criminal agreements are seldom reached in express terms and typically proven through circumstantial evidence. Benjamin thus misses the point in denigrating as "wholly inapposite" the numerous cases showing that mutual understandings to commit crimes are often established through inferences. That the cases standing for this principle run the gamut from firearms to financial crimes shows that this applies in all criminal cases. (*Compare* Benjamin Br. 22-23 *with* Br. 21-22). And there is hardly a shortage of cases applying this logic in the context of bribing politicians, whether with contributions or something else. *See, e.g.*, *United States v. Friedman*, 854 F.2d 535, 553 (2d Cir. 1988) ("Indeed, evidence of a corrupt agreement in bribery cases is usually circumstantial, because bribes are seldom accompanied by written contracts, receipts or public declarations of intentions."); *Allinson*, 27 F.4th at 925 (approving, as correct statement of law, instruction that "[t]he explicitness requirement does not require an official's specific statement that he will exchange official action for a contribution, but rather requires that the quid pro quo be clear and unambiguous, leaving no uncertainty about the terms of the bargain").

*Evans* is another such case, showing that like every other sort of conspiracy, campaign contribution *quid pro quos* can be established through "knowing winks and nods." *Evans*, 504 U.S. at 274 (Kennedy, J.,

concurring); *see Friedman*, 854 F.2d at 553 (the "agreement or understanding element of bribery is indistinguishable from a conspiratorial agreement, and accordingly may be proven by circumstantial evidence"). So obvious is this that Benjamin disclaims any argument that circumstantial evidence cannot be used to prove intent. (Benjamin Br. 24). But that is exactly what he elsewhere urges, repeatedly arguing that the *quid pro quo* here cannot be "inferred" or "proven inferentially." (Benjamin Br. 2, 10, 13, 29, 38, 49). "Inferring" is what the jury does when presented with circumstantial evidence, which by definition does not directly prove the disputed fact. *See, e.g.*, *United States v. MacPherson*, 424 F.3d 183, 189 (2d Cir. 2005); *United States v. Turcotte*, 515 F.2d 145, 150 (2d Cir. 1975) ("It is well established that a jury can infer an agreement to violate the law from circumstantial evidence.").

In any event, Benjamin's efforts to distinguish *Evans* lack merit. *First*, he asserts that the campaign contribution in *Evans* was unimportant. To the contrary, in the Supreme Court, Evans "argue[d] that the jury charge with respect to extortion . . . allowed the jury to convict him on the basis of [his] 'passive acceptance of a contribution,'" *and* "contend[ed] that the instruction . . . did not properly describe the *quid pro quo* requirement for conviction if the jury found that the payment was a campaign contribution." 504 U.S. at 267-68. The Court directly engaged with that second argument, "reject[ed] . . . criticism of the instruction, and conclude[d] that it satisfie[d] the *quid pro quo* requirement of *McCormick*." *Id.* at 268.

*Second*, Benjamin's fixation on whether the *Evans* jury concluded that the bribes were actually campaign contributions is irrelevant, because the legal issue was whether the jury instruction—given *before* the jury decided anything—properly allowed jurors to convict even if they considered the payments to be contributions. *Id.* at 268-69. The jury's determination as to whether the payments were contributions thus appears nowhere in the *Evans* opinion. That is why Benjamin has to cite the Government's brief in *Evans* to find this fact. (*See* Benjamin Br. 26 (citing *Brief for the United States*, 1991 WL 527605, at *45)). And even in that brief, this fact appeared as part of the Government's separate argument on whether sufficient evidence supported the defendant's additional conviction for tax fraud, where it was relevant because the jury had been instructed that if payments were contributions then they were not reportable income. *See* 1991 WL 527605, at *45. The notion that the jury's determination whether the bribes were truly contributions had even the slightest bearing on *Evans*' application of *McCormick* thus lacks any foundation.

*Third*, Benjamin insists that *Evans* is inapplicable because "[a] case involving both personal cash payments and campaign contributions does not raise the same concerns as one where the purported bribe consists solely of campaign contributions." (Benjamin Br. 27). Benjamin cites no authority for that distinction, and for good reason—it is entirely his own invention. As discussed above, no Circuit has discerned this distinction, and courts reject Benjamin's position with equal ease in cases involving bribes consisting solely of contributions. Nor does *Evans* itself hint at this

distinction; it could not reasonably do so, because the jury instruction it approved expressly applied "regardless of whether the payment is made in the form of a campaign contribution." 504 U.S. at 259.

## C. This Court's Cases Do Not Support the District Court's Construction of *McCormick*

In its main brief, the Government showed that the District Court's interpretation of *McCormick* was not supported by this Court's decisions in *United States v. Garcia*, 992 F.2d 409 (2d Cir. 1993), and *United States v. Ganim*, 510 F.3d 134 (2d Cir. 2007). In short, neither case concerned campaign contributions, and so their brief discussions of how *McCormick* and *Evans* might apply in a case that did involve contributions were dicta. (Br. 23-33).

Benjamin does not dispute the District Court's acknowledgment that this Court has never decided a campaign contribution bribery case. (A. 35). And his attempt to argue it has nonetheless issued binding interpretations of *McCormick* begins on a false note. He claims that "[s]ince *Ganim*, and as recently as 2020, this Court has cited and relied on its holding[ ] . . . that *McCormick* requires an 'express' *quid pro quo*." (Benjamin Br. 30). But although this Court has certainly "cited" *Ganim*—as the Government's opening brief discussed (Br. 30-31)—it has never "relied" on *Ganim*'s discussion of *McCormick*'s requirements. It could not have, if Benjamin's other claims are to be believed. If there have been no campaign contributions bribery prosecutions in this Circuit (Benjamin Br. 37), and *McCormick* applies only to campaign contributions

bribery (Benjamin Br. 27), this Court could not have relied on a definition of a standard applicable only in cases it has not considered.

Benjamin continues off-key when discussing the Government's prior citations to *Ganim* and *Garcia*. (Benjamin Br. 31-33). Even assuming the doubtful proposition that the Government can decide which portions of this Court's decisions are binding, the discussion of those cases in other briefs does not show the Government accepting Benjamin's position. Once again, Benjamin proves only that the Government has quoted his favorite parts of *Ganim* and *Garcia*, not that it relied on them as establishing the standard for campaign contributions bribery. That is (also once again) because none of those cases concerned campaign contribution bribery, and so the Government's quotations served the same purpose as this Court's discussions of *McCormick* in *Ganim* and *Garcia*: to set aside the standard for campaign contribution bribery as inapplicable to the matter at hand. *See, e.g.*, Brief for the United States of America, *United States v. Silver*, No. 18-2380, 2018 WL 6039487, at *23 n.5 (Nov. 14, 2018) (citing *Ganim* and *Garcia* for the proposition that "[w]here, as here, the payment does not take the form of a campaign contribution, the *quid pro quo* need not be 'explicit.'").

If this Court consults those briefs at all, they only further support the Government's position here. For example, Benjamin claims that the Government's brief in *United States v. Rosen* "agreed that in campaign-contribution cases the government must prove an 'express' *quid pro quo* agreement, contrasting it with the

'implied' agreement applicable in other cases." (Benjamin Br. 31). He omits, however, that the brief used "express" to mean "that the defendant intended for his payments to be tied to specific official acts," in contrast to a "payment to exercise particular kinds of influence . . . as specific opportunities arise." Brief for the United States of America, *United States v. Rosen*, No. 12-2249, 2012 WL 3900585, at *30 (Aug. 31, 2012). That only reinforces the Government's point that to the extent the discussion of "express" had any significance in cases like *Rosen*, it was to distinguish the "as opportunities arise" theory at issue in those cases, but not here. (*See* Br. 30-32).[6]

---

[6] If this Court has any doubt as to the Government's position on *McCormick*, *Ganim*, and *Garcia*, it need look no further than the Government's numerous briefs filed in the Supreme Court that successfully opposed certiorari in the decisions that reject Benjamin's position, and explained that the discussions of *McCormick* in *Ganim* and *Garcia* are dicta. *See, e.g.*, *Davis v. United States*, No. 21-5081, Opp'n to Pet. (filed Sept. 13, 2021); *Blagojevich v. United States*, No. 17-658, Opp'n to Pet., 2018 WL 1292485 (filed Mar. 9, 2018); *Blagojevich v. United States*, No. 15-664, Opp'n to Pet., 2016 WL 962857 (filed Feb. 19, 2016); *Terry v. United States*, No. 13-392, Opp'n to Pet., 2014 WL 316651 at *10 (filed Jan. 27, 2014); *Siegelman v. United States*, Nos. 11-955, 11-972, Opp'n to Pet., 2012 WL 1648363 (filed May 4, 2012); *Scrushy v. United States*, Nos. 09-167, 09-182, Opp'n to Pet., 2009 WL 3844431 (filed

When Benjamin finally attempts to explain how the language upon which he relies was necessary to the decision of *Garcia*, he claims that "[i]f *Evans* had been a campaign contribution case, and its holding (like *McCormick*'s) limited to that context, this Court would not have reversed" in *Garcia*. (Benjamin Br. 33). That is true, but it is also irrelevant. No one has suggested that *Evans* is *limited* to contribution cases; the question is whether *Evans* also applies to contribution cases. (A. 31-35).[7] And although *Garcia* would have been decided differently if *Evans* were limited to contribution cases, it would not have been decided differently if *Evans* also applied to contribution cases. (Br. 26-27). That means that the latter point is not a holding of *Garcia*. To take another example, *Citizens United* would have been decided differently if the First Amendment were limited to freedom of religion, but *Citizens United* does not hold that the First Amendment is inapplicable to freedom of religion.

------------

Nov. 13, 2009); *Inzunza v. United States*, No. 11-67, Opp'n to Pet., 2011 WL 5555726 (filed Nov. 14, 2011).

[7] This also was not the question in *Garcia*. There, the district court did not apply *Evans* because *Evans* had not yet been decided. *Garcia*, 992 F.2d at 413-14. Because *Evans* had been decided by the time of the appeal, the question in *Garcia* became whether the jury instructions adequately conveyed the *quid pro quo* requirement clarified in *Evans*, which unquestionably applied. *Id.* at 414.

Benjamin does not even attempt to show that *Ganim*'s statements about whether *Evans* applies in contribution cases were essential to its holding, instead claiming that they are more than "an aside or irrelevancy." (Benjamin Br. 34). But it takes more than that to make them binding on future panels. *Jimenez v. Walker*, 458 F.3d 130, 142 (2d Cir. 2006) ("If a point of law might have been decided either way without affecting any right brought into question, then, according to the principles of the common law, an opinion on such a question is not a decision."). The sole case Benjamin cites on this question is not to the contrary. In *Hormel Foods Corp. v Jim Henson Productions, Inc.*, Hormel sued to enjoin Henson from naming a character "Spa'am," in unwanted homage to Hormel's product, SPAM. 73 F.3d 497, 500 (2d Cir. 1996). The district court rejected Hormel's claims, and this Court affirmed. *Id.* at 502-08. This Court also addressed the district court's suggestion that its ruling was dictum because Henson had delayed merchandising "Spa'am" pending a ruling on its legality. This Court explained that the ruling was not dictum, citing the language Benjamin quotes and explaining that "the issue . . . was before the court, was argued before the court, and was passed on by the court." *Id.* at 508. In *Ganim*, the applicability of *Evans* to contribution cases and the meaning of "explicit" in *McCormick* were not before this Court, and so those questions were "unnecessary to the disposition of the case," *id.*, and therefore dicta.

Nor does Benjamin succeed in his fallback argument that the dicta in *Ganim* and *Garcia* are the type of considered dicta that commanded the District Court's deference. His argument here turns on

fallacies. He claims these dicta were "twice considered at length." (Benjamin Br. 34). But these dicta form less than a paragraph in *Garcia*, and only two in *Ganim*. *See Garcia*, 992 F.2d at 414; *Ganim*, 510 F.3d at 142-43. And Benjamin claims these dicta were "relied on in subsequent decisions and prosecutions." (Benjamin Br. 34). But he has not identified such reliance in campaign contribution bribery cases, because no cases on that subject exist in this Circuit. (*Supra* at 14).

That renders Benjamin's two citations on considered dicta beside the point. He cites *United States v. Oshatz*, 912 F.2d 534 (2d Cir. 1990), but does not dispute the Government's explanation that *Oshatz* shows these dicta bear no resemblance to the kind of guidance from this Court that district courts should follow even if technically dicta. (Br. 28-29). And his citation to a district court case strays even further afield; that court followed this Court's dicta from a case addressing the same basic facts, resolving the same dispute, between "nearly identical" parties, four years earlier. *See Patsy's Italian Rest., Inc. v. Banas*, 508 F. Supp. 2d 194, 209-10 (E.D.N.Y. 2007). Benjamin plainly cannot show anything of the sort here, given that this Court has apparently never addressed a campaign contributions bribery prosecution, ever.

Finally, Benjamin insists that *Ganim* and *Garcia* must be about more than their holdings in order to protect First Amendment concerns surrounding campaign contributions. (Benjamin Br. 35-36). But *Ganim* and *Garcia* did not examine those concerns, because they

did not involve campaign contributions.[8] The words "First Amendment" do not appear in either opinion. It is *McCormick* that marks the boundaries between campaign contribution protected by the First Amendment and *quid pro quo* bribery subject to prosecution. And there is nothing in *Ganim* or *Garcia* that prevents this Court from following the uniform view of seven Circuits that *McCormick* prevents true corruption while safeguarding First Amendment freedoms by criminalizing only clear and unambiguous exchanges of official acts for contributions, without requiring those agreements to be formed using brazen language like, "Thank you for the $10,000 campaign contribution. In return for it, I promise to introduce your bill tomorrow." *Inzunza*, 638 F.3d at 1014.

## D. The Bribery Counts Are Sufficiently Pled

Benjamin does not dispute that if this Court declines to adopt the District Court's unique interpretation of *McCormick*, then its dismissal of the bribery counts must be reversed. (*See* Br. 42). And he fails to rebut the Government's alternative argument that even if the District Court had not misread *McCormick*,

---

[8]  Benjamin thus fights a strawman in claiming that the Government seeks to "cabin[ ]" *McCormick*'s rule to precluding the use of the "as opportunities arise" theory in contribution cases. (Benjamin Br. 36). The point of the Government's discussion of that theory is that it may explain the appearance of the dicta in *Ganim*, not that it cabins *McCormick*'s rule, which was not at issue in that case. (*See* Br. 30-31).

it plainly misread this Court's precedents on the narrow circumstances under which counts may be dismissed before trial. (Br. 43-53).

### 1. Explicitness Is Not an Element Required to Be Alleged in an Indictment

Although "some cases debate how 'specific,' 'express' or 'explicit' a quid pro quo must be to violate the bribery, extortion and kickback laws," those "adjectives do not add a new element to these criminal statutes." *Terry*, 707 F.3d at 613. Benjamin argues otherwise, but he relies largely on cases discussing statutes not at issue here, implying elements not claimed to exist here. (Benjamin Br. 43-45). That cannot show that "explicitness" is an implied element in the instant statutes, because not everything that must be proven at trial is an implicit element. For example, this Court has found that alleging a defendant conspired to "kill" sufficed to charge conspiracy to murder, even though murder requires proving more than just killing. *United States v. Bout*, 731 F.3d 233, 240-41 (2d Cir. 2013); *see also, e.g.*, *United States v. Balde*, 943 F.3d 73, 89 (2d Cir. 2019) (although Government was required to prove that defendant knew he was unlawfully in the United States, failure to allege that he knew this fact did not mean that indictment failed to charge a crime).

Regardless, if the Indictment must allege an explicit *quid pro quo*, it does so. Benjamin fails to show that the allegation that he agreed to allocate a specific $50,000 grant "in exchange for" particular campaign contributions does not sufficiently plead an explicit

*quid pro quo.* Indeed, the sole on-point case he cites on this point says that exactly those words suffice. *See United States v. Donagher*, 520 F. Supp. 3d 1034, 1045 (N.D. Ill. 2021) (listing "in exchange for" as among the language that would plead an explicit *quid pro quo* under *McCormick*). And Benjamin does not help his case by citing *United States v. Davis*, 30 F.3d 108 (11th Cir. 1994). That opinion says nothing about whether explicitness must appear in an indictment, but rather held that the jury instructions should have included this requirement. *Id.* at 109. Nor does Benjamin dispute that in the Eleventh Circuit—as everywhere else —alleging an agreement to take official action in exchange for contributions adequately pleads an explicit *quid pro quo.* (*See* Br. 41 n.8 (citing *United States v. McGregor*, 879 F. Supp. 2d 1308, 1319 (M.D. Ala. 2012))).

Benjamin also misunderstands the relevance of this Court's decision in *United States v. Ng Lap Seng*, 934 F.3d 110 (2d Cir. 2019). (*See* Benjamin Br. 47). To be sure, *Ng* does not resolve the exact question here, because this Court has never before addressed this question. But it is analogous. In *Ng*, a United Nations official traded official action for bribes in the form of otherwise proper "voluntary contributions" on which such officials may rely for legitimate funding. 934 F.3d at 116-18 & n.4. This Court explained that although the contributions were not themselves unlawful, "making such contributions *in exchange for* a statutorily proscribed *quid pro quo* can constitute unlawful bribery," citing, with another case, *McCormick*, 500 U.S. at

273. *Ng*, 934 F.3d at 117 n.4 (emphasis in original).[9] *Ng* thus applies the same principle that other Circuits have consistently used when applying *McCormick*: Although voluntary contributions to officials may not be unlawful—even if made to gain influence with those officials—making contributions "in exchange for" official action is the sort of *quid pro quo* the law forbids.[10]

Finally, Benjamin illustrates a broader flaw in his arguments when discussing *United States v. Santeramo*, 45 F.3d 622 (2d Cir. 1995). In its main brief, the Government showed that under *Santeramo* even where an implied element must be pled in an indictment, it need not be pled in particular words. (Br. 45). In response, Benjamin argues that although the *Santeramo* indictment may have done that, the Indictment here alleges an "implicit *quid pro quo*." (Benjamin

---

[9] Benjamin insists that this Court "made clear" it was *not* applying *McCormick* by using a "*cf.*" cite before describing the holding of *McCormick*. (Benjamin Br. 47 n.7). But this Court had no obligation to cite *McCormick* at all, and so seems far more plausibly to have cited it given the parallel between the contributions at issue in *Ng* and those at issue in *McCormick*.

[10] Benjamin's attempt to distinguish other cases showing that "in exchange for" sufficiently alleges an explicit *quid pro quo* (Benjamin Br. 47-48) relies on previously discussed errors, such as claiming that *McCormick* applies only to bribes consisting solely of contributions and that the Sixth Circuit has not firmly rejected Benjamin's position. (*See supra* at 7-8).

Br. 49). Benjamin uses this phrase elsewhere in his brief, but only here does he explain what he means by it, stating that the implicit *quid pro quo* is one "inferred from the timeline of events" and Benjamin's statement "Let me see what I can do." (Benjamin Br. 49).[11]

To the extent Benjamin suggests that the Indictment alleges a *quid pro quo* that is implied by the facts but not one that existed in his mind, the Indictment refutes him. The Indictment repeatedly alleges that Benjamin "agreed to," "solicited," "demanded," and "participated in" this exchange "willfully," "corruptly," "knowingly," "intending to be influenced and rewarded," and "intending to devise a scheme and artifice to defraud." (A. 1, 15, 16, 18, 19). There is thus no colorable argument that the Indictment fails to allege that the exchange here was explicitly entered, understood, and undertaken by Benjamin. *See generally United States v. Ford*, 435 F.3d 204, 214 (2d Cir. 2006) (explaining the need to prove a *quid pro quo* reflects "the specific state of mind requirement of a bribery charge").

--------

[11] Elsewhere, Benjamin seems to evoke the District Court's contrast between an "implicit *quid pro quo*" and "explicit *quid pro quo*" under *McCormick*. (Benjamin Br. 1, 46). But as the Government previously explained, this is a false dichotomy because although the existence of the agreement can be implied —that is, proven—through circumstantial evidence, its terms must be explicit. (Br. 38).

To the extent Benjamin instead argues that the facts merely imply, rather than prove, the willful *quid pro quo* that the Indictment alleges, that argument has no bearing here. In a motion to dismiss, courts must assume that the trial will prove what the indictment alleges. *See, e.g.*, *United States v. Sampson*, 898 F.3d 270, 282 (2d Cir. 2018); *United States v. Alfonso*, 143 F.3d 772, (2d Cir. 1998); *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985). Here, Benjamin not only argues improperly that the evidence will not prove the Indictment's allegations, he does so by asking this Court to view the facts in the light most favorable to him, arguing the inferences a jury should draw and minimizing damaging parts of the record. (*Compare* Br. 51-53 *with* A. 1-18). For example, far from being asked to piece things together on their own, jurors will hear testimony from the other party to this agreement, Migdol, who will explain how he understood his agreement with Benjamin to be a *quid pro quo* of $50,000 in state funds in exchange for contributions to Benjamin. (*See* Br. 5).[12] Nor can Benjamin complain that his willful agreement to exchange official action for contributions will in part be "inferred from the

---

[12] Benjamin questions the relevance of Migdol's testimony (Benjamin Br. 49 n.9), but the testimony of the counterparty to a bribe is obviously relevant to understanding that it was a bribe. *See, e.g.*, *Ng*, 934 F.3d at 117 (counterparty "testified that he understood that a portion of the $20,000 a month that Ng was paying him ... as well as other payments ... were in fact bribes to secure" an official act).

timeline of events" and his own oblique statements: Benjamin acknowledges, as he must, that circumstantial evidence is properly considered to prove his state of mind. (Benjamin Br. 23-24).

### 2. The Bribery Counts Sufficiently Allege Crimes

The District Court also dismissed the bribery counts because it believed *McCormick* required the bribery agreement to precede any official action, but the Indictment reflected Benjamin allocating state funds and then securing the contributions. (A. 53-57). In its opening brief, the Government explained that *McCormick* imposes no such timing requirement on the bribery counts, especially given that solicitation and honest services fraud do not require a meeting of the minds, and conspiracy does not require an official action. (Br. 47-48).

In response, Benjamin primarily repeats his main argument that the Indictment fails to allege an explicit *quid pro quo*. (Benjamin Br. 50-54). But that argument cannot justify the District Court's alternative ruling as a *separate* ground for dismissal, because if the argument is wrong—as it is, for all the reasons discussed above—then it no more supports this ground for dismissal than the first one. When Benjamin finally turns to the District Court's reasoning specific to this ruling, he claims that the terms of the *quid pro quo* must be "settled" before the official action, or otherwise they are not clear and unambiguous. (Benjamin Br. 54). That is incorrect. When and in whose mind the terms must be explicit will depend on the elements of

the crime. For example, if a politician proposes "I will allocate $50,000 in state funds to your organization if you contribute to my campaign," he has certainly *solicited* a clear and unambiguous *quid pro quo*, even if he never settles upon any terms with the prospective contributor. *See United States v. Rooney*, 37 F.3d 847, 852 (2d Cir. 1994).

Benjamin also fails to defend the District Court's error in presuming that Migdol was unaware that Benjamin retained authority to withdraw the $50,000 grant throughout the relevant events simply because that fact was not alleged in the Indictment. (Br. 48-53). To start, he declines to engage with the cases holding that dismissal for evidentiary insufficiency is appropriate only where the Government has completely proffered all its evidence, and that the record here does not approach that high bar. *See, e.g.*, *Sampson*, 898 F.3d at 281-85. Instead, Benjamin asserts that the Indictment "clearly lays out the prosecution's theory." (Benjamin Br. 5, 55). But all indictments should clearly present the prosecution's theory. That does not show that they also contain a "detailed presentation of the entirety of the evidence that [the Government] would present to a jury." *Alfonso*, 143 F.3d at 777.

This gap is not filled by Benjamin's discussion of *United States v. Aleynikov*, 676 F.3d 71 (2d Cir. 2012), and *United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000). In *Aleynikov*, a computer programmer was indicted for stealing software code. 676 F.3d at 71-75. Relying on traditional tools of statutory construction, *id.* at 75-76, this Court concluded that because code is "purely intangible property" it does not qualify as the "goods,"

"wares," and "merchandise," covered by the National Stolen Property Act. *Id.* at 76-79. This Court also concluded that the code was not a "product . . . produced for or placed in interstate or foreign commerce" under the Economic Espionage Act, because the indictment described it as secret, proprietary software that was never intended to leave Goldman Sachs. *Id.* at 79–82. The indictment in that case thus specified a fact—that the stolen item was computer code—that *per se* did not violate the charged statutes, warranting dismissal. *Id.* at 82. It was as if a defendant were indicted for violating a firearms law, but his indictment specified that the firearm in question was "a knife." That bears no relationship to the detail concerning Migdol's knowledge that the District Court found missing here.

In *Pirro*, the defendant was charged with false statements on a tax return, for, among other things, failing to list a chairman of the board's "ownership interest" in a business. 212 F.3d at 89-90. This Court found no legal duty that could have required the defendant to report the chairman's ownership interest unless he was a shareholder. *Id.* at 89–91. But the indictment alleged only that the chairman had an "ownership interest"—a category that included, but was not limited to, shareholders. *Id.* at 94-95. Thus, because it alleged no facts triggering a legal duty to report the ownership interest, the indictment alleged no violation that could serve as the predicate for the charged tax offense. *Id.* at 95. It was as if the defendant were charged with violating a statute prohibiting the possession of a firearms, and his indictment stated only that he possessed "a weapon." Moreover, this Court has explained that *Pirro* belongs to the exceptional

class of cases where an indictment must provide more detail than usual, because it concerned "charges of criminal falsity." *United States v. Stringer*, 730 F.3d 120, 126-27 (2d Cir. 2013) (holding that although identity of victim is "essential element," it need not be pled in the indictment). *Pirro* thus bears no resemblance to the District Court's dismissal of the bribery counts for failure to allege a secondary detail in its "timeline of events." (A. 53).

## CONCLUSION

**The District Court's order dismissing Counts One, Two, and Three should be reversed, and this case should be remanded for trial on all counts in the Indictment.**

Dated:     New York, New York
               April 7, 2023

                             Respectfully submitted,

                             DAMIAN WILLIAMS,
                             *United States Attorney for the*
                             *Southern District of New York,*
                             *Attorney for the United States*
                                 *of America.*

JARROD L. SCHAEFFER,
HAGAN SCOTTEN,
       *Assistant United States Attorneys,*
               *Of Counsel.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this brief complies with the type-volume limitation of the Federal Rules of Appellate Procedure and this Court's Local Rules. As measured by the word processing system used to prepare this brief, there are 6,986 words in this brief.

DAMIAN WILLIAMS,
*United States Attorney for the*
*Southern District of New York*

By: HAGAN SCOTTEN,
*Assistant United States Attorney*